UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-21406-CIV-WILLIAMS/SANCHEZ

OSCAR GONZALEZ,

    Plaintiff,

v.

U.S. CITIZENSHIP AND IMMIGRATION
SERVICES (USCIS),

    Defendant.
_____/

**REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

In this case, Plaintiff Oscar Gonzalez seeks judicial review, pursuant to 8 U.S.C. § 1421(c), of the denial of his application for naturalization by Defendant U.S. Citizenship and Immigration Services ("USCIS"). ECF No. 1. The matter is now before the Court on the parties' cross-motions for summary judgment, ECF Nos. 20[1] & 25, to which both parties filed responses in opposition, ECF Nos. 26 & 27, and to which Defendant USCIS filed a reply, ECF No. 28.[2] Gonzalez seeks summary judgment ordering USCIS to naturalize him; USCIS seeks summary judgment denying Gonzalez's application for naturalization.

The issue presented is whether Gonzalez is ineligible to be naturalized because he was not lawfully admitted for permanent residence in 2005. More specifically, the issue is whether

---

[1] USCIS titled its motion as "Motion for Judgment on the Pleadings and, in the Alternative, for Summary Judgment," ECF No. 20, but later referred to it as "Defendant's cross motion for summary judgment," ECF No. 27 at 7. Because the motion relies on materials beyond the Complaint, the Court treats USCIS's motion as a motion for summary judgment. *See* Fed. R. Civ. P. 12(d).

[2] United States District Judge Kathleen M. Williams has referred all dispositive matters in this case to the undersigned for a Report and Recommendation. ECF No. 43.

Gonzalez was inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i), and therefore not lawfully admitted for permanent residence in 2005, because when traveling to the United States in 2002 under the Transit Without Visa ("TWOV") program, he had used a fake passport that misrepresented his nationality to get to the United States and had no intention to continue traveling to his ticketed destination outside the United States.

Following a careful review of the parties' filings, the pertinent portions of the record, and the applicable law, and the undersigned being otherwise fully advised in the premises, the undersigned **RESPECTFULLY RECOMMENDS** that USCIS's Motion for Summary Judgment, ECF No. 20, be **GRANTED** and Gonzalez's Motion for Summary Judgment, ECF No. 25, be **DENIED**.

### I. FACTS

Gonzalez is a Cuban national. ECF No. 20-1 (Defendant's Statement of Undisputed Material Facts) at ¶ 1; ECF No. 26 at ¶ 1. On November 30, 2002, Gonzalez arrived at Miami International Airport aboard Iberia Airlines Flight IB-6132 from San Pedro Zula, Honduras via the TWOV program. ECF No. 25-1 (Plaintiff's Statement of Undisputed Facts) at ¶¶ 1, 3; ECF No. 27-1 at ¶¶ 1, 3. The flight had a final destination of Madrid, Spain. ECF No. 25-1 at ¶ 1; ECF No. 27-1 at ¶ 1.

Under the TWOV program, "[a] passport and visa [we]re not required of an alien who [wa]s being transported in immediate and continuous transit through the United States" en route to a specifically designated foreign country. 8 C.F.R. § 212.1(f)(1) (2001). An alien utilizing the TWOV program, however, was required to be "in possession of a travel document or documents establishing his/her identity and nationality and ability to enter some country other than the United States." *Id.* Cuban citizens were barred from using the TWOV program. 8 C.F.R. § 212.1(f)(3)

(2001) ("This waiver of passport and visa requirement is not available to an alien who is a citizen of . . . Cuba . . . .").

To board the flight and travel via the TWOV program, Gonzalez used a Honduran passport that bore his photo and the false name of Yovany Leiva-Jimenez. ECF No. 25-1 at ¶¶ 2-3; ECF No. 27-1 at ¶¶ 2-3. Gonzalez, however, is not a citizen or national of Honduras. ECF No. 20-1 at ¶ 2; ECF No. 26 at ¶ 2. Moreover, although Gonzalez traveled with plane tickets having Spain as his final destination, ECF No. 20-2 at 3, Gonzalez never intended to travel to Spain or anywhere outside of the United States; he intended to remain in the United States. ECF No. 20-1 at ¶¶ 6-7; ECF No. 26 at ¶¶ 6-7.

When he arrived in Miami, Gonzalez presented himself to an Immigration and Naturalization Service ("INS") primary inspector, disclosed his true identity and that he was a Cuban national, and stated that his purpose in entering the United States was to join his family and remain in the United States. ECF No. 25-1 at ¶¶ 3, 5; ECF No. 27-1 at ¶¶ 3, 5; ECF No. 20-1 at ¶ 8; ECF No. 26 at ¶ 8. Gonzalez was processed through secondary inspection and paroled into the United States. ECF No. 25-1 at ¶ 4; ECF No. 27-1 at ¶ 4.

On January 13, 2005, USCIS approved Gonzalez's I-485 application and adjusted his status to that of a Legal Permanent Resident ("LPR") with a rollback date of December 2, 2002. ECF No. 25-1 at ¶ 6; ECF No. 27-1 at ¶ 6. When he applied for permanent residence, Gonzalez did not apply for a waiver of inadmissibility. ECF No. 20-1 at ¶ 10; ECF No. 26 at ¶ 10.

On September 2, 2014, Gonzalez applied for naturalization, and on February 19, 2015, USCIS denied his application. ECF No. 20-1 at ¶¶ 11-12; ECF No. 25-1 at ¶¶ 7-8. Gonzalez thereafter sought administrative review of that decision, and on December 23, 2015, USCIS affirmed the denial of naturalization on the grounds that Gonzalez was not "lawfully admitted for

permanent residence" because he was inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i) when USCIS adjusted his status and that he was therefore ineligible for naturalization.  ECF No. 25-1 at ¶¶ 9-10; ECF No. 20-1 at ¶¶ 13-14; ECF No. 26 at ¶¶ 13-14.

On April 20, 2016, Gonzalez filed a Petition for Review of Denial of Application for Naturalization pursuant to 8 U.S.C. § 1421(c), seeking *de novo* review and commencing the instant action.  ECF No. 1.

## II.   SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Salmeron-Salmeron v. Spivey*, 926 F.3d 1283, 1286 (11th Cir. 2019) (quoting Fed. R. Civ. P. 56(a)).  The Court must view the record and all factual inferences in the light most favorable to the non-moving party and decide whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Luke v. Gulley*, 50 F.4th 90, 95 (11th Cir. 2022).

The existence of a factual dispute by itself is not enough to defeat a motion for summary judgment; rather, "the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48.  "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case.  An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (quoting *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004)); *see also Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) ("For factual

4

issues to be considered genuine, they must have a real basis in the record.") (quoting *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993)).

When ruling on cross-motions for summary judgment, "[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Scottsdale Ins. Co. v. Cutz, LLC*, 543 F. Supp. 2d 1310, 1313-14 (S.D. Fla. 2007) (quoting 10A Charles Alan Wright, Arthur Miller & Mary Kay Kane, Federal Practice and Procedure § 2720 (3d ed. 1998)).

### III.  DISCUSSION

"In order to succeed on a petition for naturalization, an alien must meet the statutory requirements for citizenship set out in 8 U.S.C. § 1427." *Bueno v. USCIS Kendall Field Off.*, 809 F. App'x 651, 654 (11th Cir. 2020); *see also Reganit v. Sec'y, Dep't of Homeland Sec.*, 814 F.3d 1253, 1257 (11th Cir. 2016) (citing *Fedorenko v. United States*, 449 U.S. 490, 505-06 (1981)). These statutory requirements require an alien to show, among other things, that he was "lawfully admitted for permanent residence" in the United States.  8 U.S.C. § 1427(a) (providing that no person shall be naturalized unless the person has satisfied, *inter alia*, continuous residency requirements "after being lawfully admitted for permanent residence"); *see also, e.g.*, 8 U.S.C. § 1429 ("Except as otherwise provided in this subchapter, no person shall be naturalized unless he has been lawfully admitted to the United States for permanent residence in accordance with all applicable provisions of this chapter."); *Reganit*, 814 F.3d at 1257; *Bueno*, 809 F. App'x at 654. The burden is on the applicant to show compliance with this requirement.  *See Berenyi v. Dist. Dir. INS*, 385 U.S. 630, 637 (1967).

Being "lawfully admitted for permanent residence," means "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in

5

accordance with the immigration laws, such status not having changed." 8 U.S.C. § 1101(a)(20); *see also Savoury v. U.S. Att'y Gen.*, 449 F.3d 1307, 1313-18 (11th Cir. 2006) (holding that "lawfully admitted for permanent residence" means an alien's adjustment to LPR status must have been "in compliance with the substantive requirements of the law"). At the time USCIS adjusted Gonzalez's status to LPR, moreover, the Immigration and Nationality Act ("INA") provided that "[a]ny alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter" is inadmissible. 8 U.S.C. § 1182(a)(6)(C)(i). Under this statutory framework, an alien who was inadmissible under § 1182(a)(6)(C)(i) at the time of his adjustment of status has not been lawfully admitted to the United States for permanent residence. *See Savoury*, 449 F.3d at 1313 (holding that the award of permanent resident status to an inadmissible alien "was not consistent with the law; it was not lawful; it was not 'in accordance with the immigration laws'") (quoting 8 U.S.C. § 1101(a)(20)); *see also* 8 U.S.C. § 1255(a) (allowing adjustment of status to that of an "alien lawfully admitted for permanent residence" if, *inter alia*, "the alien is . . . admissible to the United States for permanent residence").

Accordingly, the issue to be resolved on summary judgment in this case is whether Gonzalez was inadmissible under § 1182(a)(6)(C)(i), and therefore not "lawfully admitted for permanent residence" when USCIS adjusted his status in 2005, because he, by fraud or by willfully misrepresenting a material fact, had procured either (1) admission into the United States or (2) other benefit provided under the INA. If Gonzalez procured either admission into the United States or other benefit provided under the INA by fraud or by willfully misrepresenting a material fact, then he was not "lawfully admitted for permanent residence" in 2005 and he is ineligible to be naturalized. *See* 8 U.S.C. §§ 1427(a), 1429, 1182(a)(6)(C)(i), 1101(a)(20).

The Court reviews Gonzalez's eligibility for naturalization "de novo," making "its own findings of fact and conclusions of law." 8 U.S.C. § 1421(c); *see also Bueno*, 809 F. App'x at 654 ("A district court reviews the denial of an application for citizenship *de novo*."). When addressing summary judgment motions, that *de novo* review occurs within the legal framework governing summary judgment.

*A. Whether Gonzalez Procured an "Other Benefit" by Fraud*

USCIS contends that Gonzalez "is not eligible to naturalize, because before he became a permanent resident, Gonzalez obtained an immigration benefit by fraud or willful misrepresentation." ECF No. 20 at 1; *see also, e.g.*, ECF No. 27 at 1. More specifically, USCIS argues that, by using a fraudulent Honduran passport, Gonzalez obtained an immigration benefit within the meaning of 8 U.S.C. § 1182(a)(6)(C)(i)—access to the INA-authorized Transit Without Visa ("TWOV") program, a program unavailable to him as a Cuban national, that allowed him to travel to the United States without a visa—by fraud or willful misrepresentation. *See, e.g.*, ECF No. 20 at 5-7; ECF No. 27 at 1, 4.

The INA authorizes the Attorney General to enter into agreements with airlines (and other transportation lines) "to guarantee the passage through the United States in immediate and continuous transit of aliens destined to foreign countries," 8 U.S.C. § 1223(c) (previously codified at 8 U.S.C. § 1228), and it further authorizes the waiver of visas for "aliens proceeding in immediate and continuous transit through the United States" under such agreements, 8 U.S.C. § 1182(d)(4)(C). In 2002, the TWOV program, which implemented § 1182(d)(4)(C), provided that "[a] passport and visa [we]re not required of an alien who [wa]s being transported in immediate and continuous transit through the United States" en route to a specifically designated foreign country. 8 C.F.R. § 212.1(f)(1) (2001). An alien utilizing the TWOV program, however,

7

was required to be "in possession of a travel document or documents establishing his/her identity and nationality and ability to enter some country other than the United States." *Id.* Cuban citizens were barred from using the TWOV program. 8 C.F.R. § 212.1(f)(3) (2001) ("This waiver of passport and visa requirement is not available to an alien who is a citizen of . . . Cuba . . . .").

Given this legal framework, it is apparent that participation in the TWOV program—which allows aliens to travel to the United States without obtaining a visa—is a benefit that was provided under the INA for aliens who met the qualifications set forth in 8 C.F.R. § 212.1(f). Indeed, courts that have considered the question, including the Eleventh Circuit, have concluded that participation in the TWOV program is a "benefit" provided under the INA that falls within the scope of 8 U.S.C. § 1182(a)(6)(C)(i). *See Kurt v. Att'y Gen.*, 252 F. App'x 295, 298 (11th Cir. 2007) (holding that an alien who purchased an airline ticket with a destination outside of the United States "made a material misrepresentation (his final destination) in order to obtain a benefit under the Act (the benefit of TWOV status)"); *Ymeri v. Ashcroft*, 387 F.3d 12, 19-20 (1st Cir. 2004) (holding that "the privilege of traveling as transit without visa participants" constituted a "benefit under the Immigration laws").

Here, Gonzalez does not dispute that use of the TWOV program was an "other benefit" within the meaning of § 1182(a)(6)(C)(i). Indeed, Gonzalez offers no argument that use of the TWOV program was not a benefit provided under the INA, and he concedes that the issue concerning inadmissibility for fraudulent participation in the TWOV program "finally bec[ame] clearly settled by 2007 after *Kurt*." ECF No. 25 at 13; *see also id.* at 17 (recognizing that, in *Kurt*, "the Eleventh Circuit did find that TWOV entrants were subject to [8 U.S.C. § 1182(a)(6)(C)(i)] inadmissibility"); *but see id.* at 18 (conceding that "ruling that TWOV status is an immigration benefit *is* a reasonable interpretation" but declining to "concede that it is the best interpretation").

Instead, Gonzalez argues that his adjustment to LPR status in 2005 "was in compliance with the law at the time" because, in 2005, the law was "unsettled" about whether "a Cuban national who used the TWOV program to come to the United States but who presented themselves under their true Cuban identity to INS/USCIS and were subsequently paroled into the United States under their true identity" had committed fraud that fell within the scope of 8 U.S.C. § 1182(a)(6)(C)(i). ECF No. 25 at 1-2; *see also, e.g.*, *id.* at 6-17.  Gonzalez points to the unsettled state of case law and what amounted to a de facto government policy that the Eleventh Circuit recognized in the *Bueno* case—that is, a policy that "allow[ed] TWOV Cuban nationals to obtain legal permanent resident status rather than conclude that the use of TWOV by Cubans qualified as fraud," *Bueno*, 809 F. App'x at 655—to argue that his adjustment to LPR status in 2005 was "lawful" despite the language of § 1182(a)(6)(C)(i) and his prior use of a fraudulent Honduran passport in another's name to misrepresent his nationality and thereby gain access to the TWOV program to travel to the United States on an airline ticket on which he was supposed to continue traveling to Spain. *See* ECF No. 25 at 6-17; *see also id.* at 17 (arguing that adjustment to permanent residence was lawful because, at the time of that adjustment, "USCIS was permitted to interpret the words 'other benefit under this chapter' of INA §212(a)(6)(C)(i) in such a way as to not include the arrival of nationals of non-TWOV countries in the United States on the TWOV program").

But, as Gonzalez recognizes, *see* ECF No. 25 at 5, "[w]hat is lawful depends on the law and not on administrative inadvertence or error."  *Savoury*, 449 F.3d at 1317.  Thus, although immigration authorities may have been misapplying 8 U.S.C. § 1182(a)(6)(C)(i) in 2005, as well as before that, and may have believed that they were applying § 1182(a)(6)(C)(i) in accordance with the law, the governing statutory provision was the same in 2005 as it was in *Kurt* and *Ymeri* and as it is today.  And under the language of § 1182(a)(6)(C)(i), the TWOV program was an

9

"other benefit" provided under the INA, whether or not courts had yet issued opinions judicially announcing that the TWOV program was a "benefit" that fell within the meaning of the language of § 1182(a)(6)(C)(i). *Kurt* and *Ymeri* interpreted § 1182(a); they did not change it. Thus, if the TWOV "other benefit" was obtained by Gonzalez by fraud or by willfully misrepresenting a material fact, then he was inadmissible in 2005 under the language of 8 U.S.C. § 1182(a)(6)(C)(i); he was not "lawfully admitted for permanent residence" "in accordance with law"; and he is ineligible to be naturalized. *See Savoury*, 449 F.3d at 1313; 8 U.S.C. §§ 1427(a), 1429, 1182(a)(6)(C)(i), 1101(a)(20), 1255(a).

Here, the undisputed facts establish that Gonzalez obtained TWOV status in 2002 by fraud and willful misrepresentation of a material fact: Gonzalez willfully used a fraudulent Honduran passport that materially misrepresented his identity and nationality and concealed his Cuban citizenship, as well as an airline ticket with a final destination of Spain, despite his intent not to continue traveling to Spain after arriving in the United States. *See also United States v. Kavazanjian*, 623 F.2d 730, 738 (1st Cir. 1980) ("We agree that the aliens, by arriving as TWOVs with no intention of effecting an orderly and expeditious departure, were guilty of fraud or misrepresentation.").

Given these undisputed facts, Gonzalez was inadmissible in 2005 under 8 U.S.C. § 1182(a)(6)(C)(i), he was not "lawfully admitted for permanent residence," and he is ineligible to be naturalized. *See Savoury*, 449 F.3d at 1313; 8 U.S.C. §§ 1427(a), 1429, 1182(a)(6)(C)(i), 1101(a)(20), 1255(a).

B.  Whether Gonzalez Procured "Admission" by Fraud

Because Gonzalez's inadmissibility under § 1182(a)(6)(C)(i) due to his fraud and willful misrepresentations to obtain TWOV status makes him ineligible to be naturalized, the Court need

not reach the additional issue raised by Gonzalez that he did not procure admission into the United States by fraud or willful misrepresentation of a material fact. *See* ECF 25 at 6-17. Nonetheless, the Court recognizes that USCIS does not argue that Gonzalez was inadmissible under § 1182(a)(6)(C)(i) because he procured admission into the United States by fraud or willful misrepresentation of a material fact. *See, e.g.*, ECF No. 27 at 7 ("Gonzalez's problem is not whether he meets the definition of entry, but that he procured an immigration benefit – travel to the United States under the TWOV – by fraud."). The undisputed facts, moreover, establish that, upon arriving in the United States and presenting himself to an INS inspector, and before being paroled into the United States, Gonzalez truthfully disclosed to immigration authorities his true identity and nationality, as well as his intended purpose to join his family and remain in the United Sates rather than continue his travels under the TWOV program to Spain. Under these circumstances, the summary judgment record fails to establish that Gonzalez was inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i) for procuring admission into the United States by fraud or by willfully misrepresenting material facts to obtain TWOV status and get to the United States. *See also* 8 U.S.C. § 1101(a)(13)(A) (defining "admission" as "the lawful entry of the alien into the United States *after inspection and authorization by an immigration officer*") (emphasis added); 8 U.S.C. § 1182(d)(5)(A) ("[P]arole of such alien shall not be regarded as an admission of the alien.").

### IV.   CONCLUSION

Here, Gonzalez was ineligible to be naturalized because, by fraud and willful misrepresentation of material facts, he procured participation in the TWOV program, a benefit under the INA, to get to the United States in 2002. As a result, he was inadmissible under the INA, he did not apply for a waiver of inadmissibility, and his adjustment to permanent residence in 2005

was therefore not lawful and not in accordance with the law. Accordingly, USCIS correctly denied Gonzalez's naturalization application.

Based on the foregoing, the undersigned **RESPECTFULLY RECOMMENDS** that Defendant USCIS's Motion for Summary Judgment, ECF No. 20, be **GRANTED** and that Plaintiff Gonzalez's Motion for Summary Judgment, ECF No. 25, be **DENIED**.

Within fourteen (14) days from the date of receipt of this Report and Recommendation, the parties shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Kathleen M. Williams, United States District Judge. Failing to file timely objections will bar a *de novo* determination by the District Judge of any issue addressed in the Report and Recommendation, will constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions," and will only allow appellate review of the district court order "for plain error if necessary in the interests of justice." 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**RESPECTFULLY RECOMMENDED** in chambers in Miami, Florida, this 31st day of July 2024.

EDUARDO I. SANCHEZ
UNITED STATES MAGISTRATE JUDGE

cc:   Hon. Kathleen M. Williams
      Counsel of Record